**In re Raymond James FRITSCHE, Sr., Hazel M. Fritsche, Debtors.**

**BARICK FURNITURE CORP., Plaintiff,**

v.

**Jason MONZACK, Trustee, Raymond James Fritsche, Sr., Hazel M. Fritsche, Debtors, Defendants.**

**Bankruptcy No. 8300603.**

United States Bankruptcy Court, D. Rhode Island.

Feb. 9, 1984.

Avram N. Cohen, Providence, R.I., for plaintiff.

Larry Dub, Pearlman & Vogel, Providence, R.I., for debtors.

DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 22, 1983, on the motion of plaintiff Barick Furniture Corp. (Barick) to amend its motion for relief from the automatic stay. Barick contends that the purpose of the motion to amend is to

---

correct a procedural defect, namely, that the first motion erroneously referred to Barick as a secured party rather than as a lessor. The debtors object, alleging prejudice, on the ground that the motion to amend was filed after the parties submitted memoranda on the substantive issues in this case, and further that in the amended motion Barick improperly requests counsel fees. Neither objection has merit.

■ With respect to the request for counsel fees, Barick's amended motion contains language identical to that used in the earlier motion. As for the debtors' other objection, Barick's motion to amend was filed simultaneously with its brief, in which it argued that plaintiff was a lessor. More than two weeks later, the debtors filed their memorandum, in which they address the issue of Barick's status as a lessor, secured party, or neither. Because the debtors have addressed all of the issues raised in the amended motion, and because leave to amend pleadings "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), the motion to amend is granted.

■ The parties have submitted memoranda on the substantive issues in this proceeding, and those matters can now be addressed. Barick contends that "it has title to certain furniture [in the debtors' possession] under certain leases and in the alternative that it has a perfected security interest" in the furniture. Plaintiff's Memorandum at 1. The debtors argue that the alleged leases "are nothing more than conditional sales contracts." Memorandum of Defendants Raymond and Hazel Fritsche at 2. After examining the documents accompanying Barick's memorandum, the Court agrees with the debtors that these are not leases. The ineptly drafted documents refer to Barick as both "lessor" and "seller," and to the customer (here, the debtors) as both "lessee" and "buyer." Each of the agreements refers to one or more articles of furniture, and lists (1) the "Cash Price," (2) state sales tax, (3) total price, (4) amount financed, (5) finance charge, (6) total payments, (7) deferred payment price, and (8) annual percentage rate. The annual percentage rate ranges from 16.22% on one transaction involving a vacuum cleaner, to 21% on a bedroom set. Each of the agreements provides for weekly payments over a specified period, at the end of which the "deferred payment price" will have been fully paid.[1] At that time, the "lessee" may "purchase" the furniture for a sum which is not specified in any of the documents.[2]

The case law is extensive on "sales disguised as leases," *In re Oak Manufacturing, Inc.,* 6 U.C.C.R.S. 1273, 1276 (Bankr.S.D.N.Y.1969); *see also In re Tucker,* 34 B.R. 257 (Bkrtcy.W.D.Okl.1983), and cases cited therein. Based on the record and the applicable law we must conclude that the agreements in question are not leases.

Leases with options to purchase for little or no additional consideration are normally determined to be security agreements. R.I. GEN.LAWS § 6A–1–201(37); *see also In re Tucker, supra,* and cases cited therein. The agreements at issue are silent on the question of how much, if any, additional consideration is required to effect a "purchase"; indeed, the documents are so contradictory in their use of terms of "leasing" and "selling" that while they cannot be considered leases, neither do they easily lend themselves to any other type of legal characterization. The Court also holds that the last subsection of R.I.GEN.LAWS § 6A–1–201(37)—"an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration

---

1. An agreement executed on June 2, 1982, provides that a bookcase which has a "Cash Price" of $239.95 could be "leased" over a 78-week period at a cost of $16.83 per week—or a total cost of $1312.74. Although each of the agreements refers to weekly payments, it appears that these payments must have been intended to be made monthly.

2. Each of the agreements provides that the "lessee" may purchase the goods at the end of the term for "the sum of _____." In none of the documents is an amount included in the space provided.

does make the lease one intended for security"—is not applicable to the facts of this case.[3]

Although Barick argues that it "complied with the provisions of the Uniform Commercial Code ... by filing a Financing Statement (UCC 1) with the Secretary of State ... on February 10, 1982," two of the agreements in question [4] were executed several months after that date. Furthermore, a security interest is not perfected until it has attached, R.I.GEN.LAWS § 6A–9–303(1), and attachment does not occur until "the debtor has signed a security agreement which contains a description of the collateral," § 6A–9–203(1)(a). Barick has failed to demonstrate, and the Court is unable to discern, anything in the documents submitted which meets the criteria of a "security agreement." [5] Based on the documentation, the Court is constrained to hold that Barick did not lease the furniture in question to the debtors, and also that it failed to retain or perfect a security interest in said property.

Because Barick has neither title to nor a security interest in the household goods in question, its motion for relief from the automatic stay provided by 11 U.S.C. § 362 is denied, and because the relief sought by the movant is denied, its request for attorneys' fees is also denied.

Enter judgment accordingly.

3. In attempting to persuade the Court that the documents should be construed as leases and not security agreements, Barick contends that "[t]he consideration for [the purchase of the goods in question] is not set forth as a nominal consideration," and argues that R.I.GEN.LAWS § 6A–1–201(37) "do[es] not operate to turn the lease agreement into a security agreement." Plaintiff's Memorandum at 3.

4. There is some confusion regarding the number of documents at issue in this proceeding. Barick has submitted seven agreements (with dates ranging from June 25, 1979 to May 12, 1983), whereas the debtors contend that only the documents dated January 27, 1982, June 2, 1982, and May 12, 1983 are at issue. Because the Court concludes that none of these documents is either a lease or a security agreement, we need not resolve the question of precisely which of the agreements are at issue.

5. The Court is aware that in construing sales contracts which appear to be leases, many courts rely solely on the Uniform Commercial Code's definition of "security interest," § 1–201(37), which provides, *inter alia,* that "an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." Thus, an agreement which purports to be a lease but which provides for purchase for little or no consideration is normally construed to be a security agreement. *See, e.g., In re Tucker,* 34 B.R. 257 (Bkrtcy.W.D.Okl.1983), and cases cited therein. In the instant case, however, the agreement is defective on such varied grounds that we are unable to construe it either as a lease or as a security agreement.